1  ALEX G. TSE (CABN 152348)
   Acting United States Attorney

2
   BARBARA J. VALLIERE (DCBN 439353)
3  Chief, Criminal Division

4  JOHN HEMANN (CABN 165823)
   COLIN SAMPSON (CABN 249784)
5  ERIN CORNELL (CABN 227135)
   Assistant United States Attorneys

6
        450 Golden Gate Avenue, Box 36055
7       San Francisco, California 94102-3495
        Telephone: (415) 436-7124
8       Facsimile: (415) 436-6748
        Email: Colin.Sampson@usdoj.gov

9
   Attorneys for United States of America
10

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                       SAN FRANCISCO DIVISION

14  UNITED STATES OF AMERICA,             )  CR 16-00411 VC
                                          )
15       Plaintiff,                       )  UNITED STATES' APPEAL OF MAGISTRATE
                                          )  JUDGE LAPORTE'S ORDER ALLOWING
16    v.                                  )  DEFENDANT TO TRAVEL TO LITHUANIA
                                          )
17  MARK MIGDAL,                          )
                                          )
18       Defendant.                       )
                                          )
19  _____

20        The United States hereby appeals the order of Magistrate Judge Elizabeth D. Laporte, allowing

21  the defendant, Mark Migdal, to travel to Lithuania for business over the course of 12 days before he

22  surrenders to serve his sentence.  The District Court, having recently sentenced defendant, should

23  properly determine whether his request to travel to Lithuania for business outweighs his risk of flight.

24  As set forth below, the defendant has failed his burden of demonstrating that he is not a flight risk.  In

25  fact, defendant presents a real and significant flight risk – a risk that cannot be mitigated by the

26  additional conditions imposed in Magistrate Judge Laporte's order.  For the reasons set forth herein, the

27  government respectfully requests that the Court reverse the Magistrate Judge's order allowing the

28  defendant to travel to Lithuania.

APPEAL OF ORDER ALLOWING TRAVEL,
CR 16-00411 VC                                   1

1

## I.      RELEVANT FACTS

2      On July 25, 2017, the defendant pled guilty to Count One (conspiracy to commit bank fraud in

3   violation of 18 U.S.C. § 1349) and Counts Seven and Eight (false statements on a loan or credit

4   application in violation of 18 U.S.C. § 1014) of the First Superseding Indictment.  ECF No. 96.  On

5   April 24, 2018, the defendant was[1] sentenced to 18 months' custody on each count (to run concurrently),

6   three years' supervised release, restitution in the amount of $460,215.02, a forfeiture money judgment in

7   the amount of $539,784.98, and a fine in the amount of $1,000,000.  ECF No. 218.  The defendant was

8   further ordered to surrender for his sentence on September 28, 2018.  *Id*.  The Court set a September 28,

9   2018 surrender date in part due to defendant's assertion that he required two knee surgeries before he

10   surrenders.

11      On May 9, 2018, the defendant asked the Court to modify the terms of his pretrial release to

12   allow him to go to Lithuania for reasons related to a real estate development project.  *See*, *generally*,

13   Defendant's Motion to Modify Release Conditions to Allow Travel to Lithuania, ECF No. 221.  The

14   government opposed the motion.  ECF No. 222.  At a hearing held on May 15, 2018, the Court agreed to

15   modify the terms of the defendant's pretrial release to allow him to travel to Lithuania under the

16   following conditions: he was to travel to Lithuania (and only Lithuania) for only 12 days and only for

17   business purposes; he will be given his United States passport for only the time necessary to travel to

18   and from Lithuania; his wife and child will give their passports to pretrial services for the duration of the

19   Lithuania trip; he will post $100,000 cash; his release bond was increased to $4 million and is now

20   secured by both the defendant's Portola Valley property, as well as his condominium located in

21   Mountain View.  ECF No. 226.  At the government's request, the Court stayed the order for 48 hours.

22   ## II.      ARGUMENT

23      During the pretrial phase of this case, should the United States have wished to have the

24   defendant detained, it would have been the United States' burden to show by a preponderance of the

25

26      [1] The government raised its concern at to the Magistrate Judge that there is not $4,000,000 in
equity in the Golden Oak property, unless the $3,000,000 lien owed to "Grand Century Trading Group
27   Ltd." is actually a sham, as the government suspects.  Attorney Menachem Schillit, an associate of
defendant's and the U.S. Agent for the entity that owns the Palo Alto townhouses and the purported lien
28   on defendant's house, might be able to clear up these questions.  The Court ultimately required that the
Palo Alto condominium also be pledged toward the increased bond.

1    evidence that she was a risk of flight and by clear and convincing evidence that she was a danger to the

2    community.  *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).  The bail statute now places

3    the burden on the *defendant* to show by clear and convincing evidence that she is not a risk of flight and

4    not a danger to the community.  .  Fed. R. Crim P. 46(c); 18 U.S.C. § 3143(b).  The defendant has not

5    met his burden.

6          The defendant is a citizen of, and possesses passports from, the United States, Canada, and

7    Israel.  While he would only be given his United States passport for his trip to Lithuania, there is nothing

8    stopping him from continuing on to Israel, claiming that he lost his passport, and being allowed entry

9    into Israel, where the United States government's extradition efforts would likely fail.  As a dual U.S.

10   and Israeli citizen, Israel may decline to extradite its own citizen to the United States, as demonstrated

11   by several notable cases over the past decade.

12         It has also come to the government's attention that the defendant has been liquidating, or

13   attempting to liquidate, some of his assets.  In addition to the prospective sale of his Hawaii properties,

14   of which the Court is aware, defendant controls other properties which he has not reported to the Court

15   or to the Probation Officer.  Defendant and his wife enjoy all of the rental income from 3 townhouses in

16   Palo Alto valued at over $10,000,000, although he denies that he owns them (they are titled in the name

17   of Century Grand Trading Group, Ltd., discussed above).  The property was recently listed for sale, but

18   the listing was quickly removed.  Defendant further owns (but failed to disclose to the U.S Probation

19   Office) a cabin at Martins Beach which he purchased in cash for over $100,000 during the same 1-

20   month period that he was committing the bank fraud scheme alleged in Count One.  The combination of

21   defendant's access to significant assets and possible attempts to liquidate his own assets and (at least)

22   the main income-generating assets of his business (Century Grand) suggest that Defendant may seek to

23   avoid his jail sentence (and the additional $1,000,000 how owes in fines and forfeiture) and enjoy his

24   wealth in another country.  While it is possible that he is merely trying to provide stable finances to his

25   wife and child while he serves his sentence, it also could be the defendant setting himself up to live in

26   another country so that he does not have to return to serve his sentence.

27         The defendant's assertion that the fact that he has not fled so far, even when he knew he was

28   likely facing an 18-month prison sentence, ring hollow because until the defendant was actually

APPEAL OF ORDER ALLOWING TRAVEL,
CR 16-00411 VC                                                3

1    sentenced, it was possible that the Court would have rejected the plea agreement and the case would

2    have moved forward.  Only now is the prison sentence certain and imminent, thus increasing the

3    likelihood that the defendant will flee.

4         Furthermore, in this age of technology, it is unclear why the defendant cannot conduct his

5    business by Skype or another electronic means.  The only evidence proffered by defendant to meet his

6    burden were several pages of untranslated Lithuanian documents and his assurance that he personally

7    needed to go to Lithuania to make sure that his investment is not lost.  Defendant has been quite vague

8    about the nature of his business interests in the Ukraine and his personal involvement in it, although he

9    has moved $1,000,000 cash to Lithuania for what appears to be a housing development.  When posed

10   with this question by Judge Laporte, defendant merely said that his hiring of an employee to oversee his

11   investment would be much harder than going there personally.  The Court should not take the risk that

12   this multi-citizen defendant with access to millions of dollars might escape his sentence and fine to

13   enjoy a comfortable retirement in Israel or elsewhere simply because an investment might suffer while

14   he is serving his sentence.

15   **III.        CONCLUSION**

16        Defendant has not met his burden of demonstrating that he is not a risk of flight.  Wealthy

17   defendants should not enjoy extra privileges, such as being allowed to travel internationally to protect

18   business interests, when there is a risk that they will flee to avoid serving a sentence or paying restitution

19   or fines.  Accordingly, for the reasons set forth below, the Court should reverse the Magistrate Judge's

20   order allowing the defendant to travel to Lithuania prior to his surrender date.  The additional conditions

21   imposed by the Magistrate Judge simply do not mitigate the defendant's risk of flight.

22   DATED:  May 16, 2018                                      Respectfully submitted,

23                                                            ALEX G. TSE
                                                              Acting United States Attorney
24

25                                                            */s Colin Sampson*
                                                              _____
26                                                            COLIN SAMPSON
                                                              ERIN CORNELL
27                                                            Assistant United States Attorneys

28