Brandon Sample
Brandon Sample PLC
P.O. BOX 250
Rutland, VT 05702
Tel: 802-444-4357
E-mail: brandon@brandonsample.com
Vt Bar # 5573

*Counsel Pro Hac Vice for Mark Migdal*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, Plaintiff, v. MARK MIGDAL, Defendant. | Case No.: 16-cr-00411-VC-2 <br><br> **OPPOSED MOTION TO CONTINUE SURRENDER DATE OR STAY ORDER TO SURRENDER** <br><br> **DATE: January 8, 2019** <br> **TIME: 10:30 a.m.** <br> **CRTM.: Hon. Vince Chhabria** |
|---|---|

PLEASE TAKE NOTICE that on January 8, 2019, at 10:30 a.m.,[1] or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Vince Chhabria, defendant Mark Migdal ("Migdal") will and hereby respectfully does move for an order continuing his scheduled January 10, 2019, surrender date until May 10, 2019, or in the alternative stay its order to surrender until the Court can

---

[1] The Government advised that it is opposed to an advanced hearing on this matter. Undersigned counsel apologizes to the Court for presenting this motion on such short notice, but counsel was only retained approximately ten days ago. His appearance was entered on December 27, 2018. Given the currently scheduled motion hearing on January 8, 2019, for an unrelated motion, Migdal respectfully urges the Court to take up this motion for its consideration on January 8, 2019, as well.

1

resolve Migdal's concomitantly filed motion for an order directing service of Migdal's sentence at the Federal Bureau of Prisons' ("BOP") Residential Re-entry Center ("RRC") in San Francisco, California.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     Statement of Relevant Facts

Migdal was convicted upon entry of a guilty plea for conspiring to commit bank fraud, a violation of 18 U.S.C. § 1349, and two counts of making false statements on loan applications, a violation of 18 U.S.C. § 1018. (ECF 95). Migdal's plea was the result of a binding plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) which required that Migdal be sentenced to a term of 18 months imprisonment. (ECF 96).

On April 24, 2018, the Court sentenced Migdal to 18 months imprisonment consistent with the terms of the plea agreement. (ECF 217). Judgment memorializing the sentence was entered April 30, 2018. (ECF 218). Since then the Court has continued Migdal's surrender date twice for medical reasons. (ECF 322, 364). In the Court's last order continuing Migdal's surrender, the Court directed Migdal "to surrender to the designated Burau of Prisons facility by no later than January 10, 2019, at 2:00 p.m. If a designation has not been made by that date, he is ordered to report to the U.S. Marshal's Office at 450 Golden Gate Ave., 20th Floor, San Francisco on the same date and time." (ECF 364).

Migdal has continued to undergo medical treatment after the Court's last continuance of the surrender date. For instance, during a December 7, 2018, visit

with Dr. Bradley Graw, Migdal was advised, among other things, to "continue PT to ensure necessary healing, which is a key for a long lasting and painless use of artificial knees." *See*, Exhibit 1. The importance of continued physical therapy was implicitly recognized by the Court when it so graciously extended Migdal's surrender date until January 10, 2019. However, Migdal's physical therapy has not progressed as well as all had hoped. According to Physio Fit, the firm providing post-operative physical therapy for Migdal's knee replacements, Migdal's left "knee has gone backwards and currently showing restrictions in ROM as compared to before and also more pain and limitations." *See*, Exhibit 2. Consequently, additional physical therapy continuing until March 19, 2019, has been indicated. *See*, Exhibit 2 at p. 4. Further, Migdal has recently been diagnosed with "bilateral rotator cuff tears," *see* Exhibit 3, and "[d]egenerative spondylosis as outlined above with multilevel foraminal narrowing, canal/lateral recess narrowing at several levels encroaching on the descending nerve roots, very small broad disc protrusion L5-S1."[2]

The BOP provides medical care to inmates consistent with Program Statement 6031.04, *Patient Care*.[3] Consistent with that policy statement, treatment of Migdal's torn rotator cuffs and continuation of his physical therapy must first be

---

[2] These test results come from a recent MRI of Migdal. The results are dated December 24, 2018. A formal copy of the results will be provided to the Court in a future filing.

[3] https://www.bop.gov/policy/progstat/6031_004.pdf

3

approved by the Utilization Review Committee ("URC") at the facility where Migdal would serve his sentence. *Id.* at 7.[4] This involves a process that requires Migdal be first seen by a physician at the facility and/or the Clinical Director who makes a referral for specified care. *It is not guaranteed* that requested care will be approved, and oftentimes this process can take weeks—sometimes months. And certain categories of care, such as treatment of Migdal's torn rotator cuffs, is likely to be considered of "limited medical value" by the BOP. According to the *Patient Care* policy statement:

> Medically Acceptable – Not Always Necessary. Medical conditions which are considered elective procedures, when treatment may improve the inmate's quality of life. Relevant examples in this category include, but are not limited to:
>
> - *Joint replacement.*
> - Reconstruction of the anterior cruciate ligament of the knee.
> - Treatment of non-cancerous skin conditions (e.g. skin tags, lipomas).
>
> These therapeutic interventions always require review by the Institution Utilization Review Committee. Relevant factors to consider in approving the proposed treatment in this category include, but are not limited to:
>
> - The risks and benefits of the treatment.
> - Available resources.
> - Natural history of the condition.
> - The effect of the intervention on inmate functioning in his/her activities of daily living.

Program Statement 6031.04, *Patient Care*, p. 6 (emphasis added). And because Migdal's sentence is only 18 months, there is a great likelihood BOP will not even

---

[4] Inmates confined to an RRC receive treatment in the community. No URC approval is required for medical care to inmates in an RRC.

consider treating Migdal's torn rotator cuffs. Per the *Patient Care* policy statement, "inmates with less than 12 months to serve, are ineligible" for so-called "elective" care. *Id.* at p. 5. With good conduct time, Migdal will have approximately 15 months to serve when he begins his sentence. Given the time required to evaluate Migdal for potential surgery on his shoulders, there is little chance BOP will treat Migdal's torn rotator cuffs during the entirety of Migdal's incarceration.

On December 27, 2018, the Court granted undersigned counsel leave to appear *pro hac vice* in this matter. Migdal has since moved for 28 U.S.C. § 2255 relief in this matter and separately moved for an order directing service of his sentence at the RRC in San Francisco consistent with RFRA. Migdal now moves to continue his surrender date or a stay of the Court's surrender order.

**II. Argument**

**(a)** <u>**The Court Should Continue Migdal's Surrender Date**</u>

Migdal respectfully urges the Court to continue his surrender date until May 10, 2019. First, Migdal has filed a 28 U.S.C. § 2255 motion which alleges that he passed on a more favorable plea bargain because his counsel did not adequately advise him concerning the Government's plea offer. Resolution of Migdal's § 2255 motion will likely require an evidentiary hearing with Migdal's testimony. A short additional delay of until May 10, 2018, to consider Migdal's § 2255 motion would allow Migdal to appear more easily at an evidentiary and continue working closely with counsel throughout the § 2255 process. Moreover, should the Court grant Migdal's § 2255 motion, resentencing pursuant to the grant of § 2255 relief may

5

result in a lower term of imprisonment, or no imprisonment at all. Accordingly, on this basis alone, there is sufficient cause to postpone Migdal's surrender until May 10, 2019.

Second, the Court should continue Migdal's surrender in order to allow Migdal additional time to receive adequate medical care in the community. Should Migdal be required to surrender on January 10, 2019, the BOP will not provide timely physical therapy to ensure proper continuity of care. And the BOP, in all likelihood, will not treat Migdal's torn rotator cuffs at all. The Court's sentence of imprisonment was not intended to punish Migdal through medical care that is inconsistent with the community standard. Accordingly, on this additional basis the Court should postpone Migdal's surrender until May 10, 2019.

Finally, for the reasons discussed below, the Court should postpone Migdal's surrender or stay its surrender order until it can take up Migdal's RFRA challenge to where Migdal must serve his sentence.

**(b)** **<u>The Court Should Grant A Stay Of Its Surrender Order</u>**

"The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 434 (2009). This requires the court to weigh four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Ibid.* For the second *Nken* factor, the Ninth Circuit has explained that a petitioner

must "demonstrate that irreparable harm is *probable*" absent a stay, and that "if the petitioner has not made a certain threshold showing regarding irreparable harm ... then a stay may not issue, regardless of the petitioner's proof regarding other stay factors." *Leiva-Perez v. Holder*, 640 F.3d 962, 965–68 (9th Cir. 2011) (emphasis added).

(1) <u>Migdal Has Made A Strong Showing Of Likely Success</u>

Migdal argues in his Motion to Direct Service of Sentence at Residential Re-Entry Center ("RRC Motion") that requiring him to report the Federal Prison Camp in Lompoc, CA for service of his sentence violates the Religious Freedom Restoration Act. ("RFRA").

To make out a successful RFRA claim, Migdal must show that his (i) sincere (ii) religious exercise (iii) is being (or will be) "substantially burdened" by (iv) the "government." *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751, 2762 n.5 (2014). (RFRA uses the term "exercise of religion" instead of RLUIPA's "religious exercise," but both are defined the same); 42 U.S.C. §§ 2000bb–2(1), 2000cc-5(4). If Migdal satisfies this burden, then the burden shifts to the government to "demonstrate[] that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Hobby Lobby*, 134 S.Ct. 2751 at 2759.

Migdal sincerely believes that he has "an obligation, as embodied by the Torah and [his] marriage vows, to take care of [his] wife in sickness and health, [and] also take care of [his] daughter." (Migdal Decl. ¶ 7) (alterations added). Migdal

7

"cannot adhere to this important religious belief if [he is] forced to serve [his] sentence at a Federal Prison Camp. (Migdal Decl. ¶ 7) (alterations added). Further, because of the Court's surrender order, Migdal is "faced with a choice of honoring [his] religious beliefs and marriage vows by staying with [his] family, which would subject [him] to civil or criminal penalties for not surrendering for service of [his] sentence, or violating [his] religious beliefs by surrendering to the Federal Prison Camp in Lompoc, CA on January 10, 2019." (Migdal Decl. ¶ 8).

Migdal does not believe that his sincere beliefs would be substantially burdened if he were allowed to serve his sentence at the RRC in San Francisco, CA because "unlike the prison in Lompoc, CA, inmates at the RRC are allowed to leave the facility during the day for work and to take care of family obligations. (Migdal Decl. ¶ 10). If incarcerated at the RRC, Migdal would "be able to work and provide for [his] family while there […] take care of [his] sick wife […] and take care of [his] daughter while [his] wife continues her medical treatments." (Migdal Decl. ¶ 11).

In terms of Migdal's *prima facie* case, there is a high likelihood Migdal can show that the Court's surrender order works a substantial burden on Migdal's sincere exercise of religion. As argued in Migdal's RRC Motion, Migdal has been placed in the precarious situation of being forced to choose between not complying with the Court's surrender order so he can remain able to take care of his family consistent with his religious beliefs, or face additional criminal charges for failing to surrender. (ECF 418 at 8-10). And as also argued, it is doubtful that the Government has a compelling governmental interest in having Migdal serve his

sentence at a Federal Prison Camp compared to an RRC. (ECF 418 at 10-12). An RRC is a "penal or correctional institution," as a matter of law, like a federal prison camp. (ECF 418 at 11-12). Finally, even assuming the Government has a compelling governmental interest in requiring Migdal to serve his sentence at a federal prison camp, outright refusing to allow Migdal to serve his sentence at an RRC is not the least restrictive means. (ECF 418 at 12-13).

Migdal's RFRA claim is a straightforward application of the plain text of RFRA. Based on the arguments presented, he has made a strong showing that he will succeed on his RFRA claim. Accordingly, the Court should hold that the first factor supporting a stay weighs in Migdal's favor.

(2) <u>The Remaining Balancing Factors Also Weigh In Migdal's Favor</u>

Migdal will suffer irreparable harm if he is forced to surrender on January 10, 2019, because compliance with that order will violate RFRA, and a violation of RFRA constitutes irreparable harm. *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1146 (10th Cir. 2013). The Government, on the other hand, will suffer no prejudice if Migdal's surrender date is stayed. And as *Hobby Lobby* recognizes, an injunction to prevent a violation of RFRA is in the public interest. *Id.* Accordingly, the Court should hold that the remaining factor weigh in favor of granting a stay.

## III. Conclusion

Based on the foregoing, the Court should continue Migdal's surrender date until May 10, 2019, or stay its order to surrender until it resolves Migdal's RFRA claim.

/s/Brandon Sample

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served this 1st day of January 2019, on all counsel of record via CM/ECF:

/s/Brandon Sample